*In re* DONTRALE E., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Dontrale E., Respondent-Appellant).

Second District    No. 2—03—1305

Opinion filed June 22, 2005.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and David R. Akemann, of Elgin, for the People.

JUSTICE KAPALA delivered the opinion of the court:

On December 6, 2002, the State filed a two-count petition to adjudicate wardship, alleging that respondent, Dontrale E., is a delinquent minor in that he committed the offense of aggravated criminal sexual assault (720 ILCS 5/12—14(a)(2) (West 2002)) against five-year-old J.B. On the same date, the State filed a motion to designate the proceeding an extended jurisdiction juvenile (EJJ) prosecution pursuant to section 5—810 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5—810 (West 2002)). After a hearing, the trial court granted the motion. Subsequently, a jury found respondent guilty. The trial court sentenced respondent to an indeterminate term in the Illinois Department of Corrections, juvenile division, and to a conditional six-year adult sentence in the Department of Corrections. Respondent contends in this appeal that the trial court abused its discretion in allowing the EJJ prosecution. We affirm.

## BACKGROUND

J.B. and respondent are cousins. At the time of the alleged offense, respondent was 13 years old and J.B. was 5 years old. On October 1, 2002, J.B. was staying at respondent's home in Zion, Illinois, after school until J.B.'s mother, Veronica B., left work at 4:30 that afternoon. Respondent's mother worked that day also, and the children's grandmother was supposed to be watching J.B. When Veronica arrived at the house that afternoon to pick up J.B., however, the grandmother was just returning from McDonald's. J.B. was in the house with respondent.

Veronica sat down to eat dinner with J.B. and her other children at their home in Waukegan that evening. Before J.B. started eating, he ran to the bathroom. Veronica heard J.B. crying for her. J.B. said he was bleeding and that respondent had "put his nuts in my butt." He also told his mother that, during the encounter, respondent gave J.B. a hard push. Veronica searched unsuccessfully for J.B.'s father, to tell him what had happened, and then she took J.B. to the emergency room at Midwestern Regional Medical Center in Zion. There he was

diagnosed with a tear in his anus, extending from 11 o'clock to 1 o'clock, which was consistent with his statement that he had been sexually assaulted. The tear was less than 12 hours old. At the hospital, J.B. blurted out that respondent "put his nuts in my butt" and it hurt him "really bad."

According to J.B.'s trial testimony, respondent put him in respondent's bathroom and offered him a Pop Tart and a movie or a video game if he would allow respondent to assault him. J.B. said no. Respondent took off J.B.'s clothes and then, J.B. testified, "[h]e put his privates in my private."

## ANALYSIS

Respondent's sole contention is that the trial court abused its discretion in allowing the EJJ prosecution. Respondent argues that the State exaggerated the facts in its proffer in support of EJJ and that consideration of the statutory factors militates in favor of denying EJJ. Preliminarily, the State contends that respondent waived the issue when he did not present Judge Ceckowski, the juvenile court judge who ruled on the EJJ petition, with a motion to reconsider but proceeded to a jury trial in front of Judge Bridges, who refused to entertain the issue in a posttrial motion because Judge Ceckowski had been the judge who ruled on the EJJ motion.

■ " 'In general, when the State petitions the court for an adjudication of delinquency, the minor is subject only to the sanctions prescribed under the [Juvenile Court] Act.' *In re Matthew M.*, 335 Ill. App. 3d 276, 286 (2002), citing 705 ILCS 405/5—120 (West 2000). 'The most serious of these sanctions is the minor's commitment to the juvenile division of the Department of Corrections until the minor's twenty-first birthday.' [Citation.] As an alternative[,] under appropriate statutorily defined circumstances, 'at any time prior to the commencement of the minor's trial,' the State may ask the trial court to have the proceedings designated as an EJJ prosecution. 705 ILCS 405/5—810(1) (West 1998). 'If the trial court agrees to designate the proceeding as an EJJ prosecution, then the court, upon finding the minor guilty, must impose one or more of the penalties provided for in section 5—710 of the [Juvenile Court] Act and a conditional adult criminal sentence.' (Emphasis omitted.) [Citations.] 'In the event that the minor violates the conditions of his or her juvenile sentence or commits a new offense, the trial court must order the execution of the conditional adult criminal sentence.' [Citations.]" *In re Christopher K.*, 348 Ill. App. 3d 130, 139 (2004).

" 'To seek the designation of the proceeding as an EJJ prosecution, the State must allege that (1) a minor 13 years of age or older

committed an offense that would be a felony if committed by an adult and (2) there is probable cause to believe that the allegations in the delinquency petition and motion are true. [Citation.]' " *Christopher K.*, 348 Ill. App. 3d at 139, quoting *Matthew M.*, 335 Ill. App. 3d at 286. If the court finds the presence of these two conditions, " 'then the court must designate the proceeding as an EJJ [proceeding] unless the court finds, based on clear and convincing evidence, that adult sentencing would not be appropriate for the minor based on the following factors: (1) the seriousness of the alleged offense; (2) the minor's history of delinquency; (3) the minor's age; (4) the minor's culpability in committing the alleged offense; (5) whether the offense was committed in an aggressive or premeditated manner; and (6) whether the minor used or possessed a deadly weapon when committing the alleged offense. 705 ILCS 405/5—810 (1)(b) (West 2000).' " *Christopher K.*, 348 Ill. App. 3d at 139, quoting *Matthew M.*, 335 Ill. App. 3d at 286. We review a decision to designate a proceeding as an EJJ prosecution under the abuse of discretion standard. *In re J.W.*, 346 Ill. App. 3d 1, 17 (2004).

■ We first must determine whether respondent has waived this issue by not asking Judge Ceckowski to reconsider her ruling. The State cites no authority for its position that respondent was required to move the trial court to reconsider its EJJ designation in order to preserve the issue for appeal. The failure to cite authority to support legal arguments results in waiver of the argument. *Chicago Title & Trust Co. v. Weiss*, 238 Ill. App. 3d 921, 927 (1992). Waiver aside, we believe that no motion to reconsider was necessary. While physically tried in an adult courtroom because he was entitled to a jury trial, respondent at all times was subject to the jurisdiction of the juvenile court. We agree with respondent that neither the Act nor our supreme court's rules require a posttrial motion. See *In re W.C.*, 167 Ill. 2d 307, 323 (1995). Consequently, respondent has not waived this issue.

■ Respondent contends that the State misrepresented the facts of the case in its proffer in support of the EJJ motion. In its proffer, the State commented:

> "[J.B.] recounted that first this minor told him to suck it, referring to his penis. [J.B.] indicated to witnesses that when Dontrale *** told [J.B.] that, [J.B.] was scared. He began to move around in the bathroom, at which time the minor punched [J.B.] because he was moving."

Respondent argues that J.B. did not testify at trial to the punch, thus removing the factor that the offense was committed in an aggressive manner. However, cross-examination of J.B.'s mother at trial by respondent's own attorney elicited the following:

"Q. Did [J.B.] tell you that Dontrale pushed him?
A. Yes.
Q. Did he say how he was pushed?
A. He just said he pushed me hard.
Q. Hard enough to knock him down?
A. I didn't ask him.
Q. Hard enough to knock him into a wall?
A. I didn't ask him."

This testimony that J.B. told his mother that respondent pushed him hard does establish the aggressiveness factor. Moreover, even without the punch or the push, the evidence of the tear in J.B.'s anus showed that the crime was one of aggression. We do not believe that the State misrepresented the facts in its proffer.

Respondent asserts that the trial court considered only the seriousness of the offense and did not weigh the other five factors. This argument is without merit. The trial court enunciated the six factors in summarizing the evidence, and, in announcing its conclusions based on the proffers and the evidence, the trial court stated:

"As to [J.B.], the case *** is a very serious offense. There is no other person involved other than [respondent], according to the proffer from the State. So he is the most culpable in committing this. There is no type of accountability theory. As far as the offense being committed in an aggressive and premeditated manner, I find it was aggressive. Moving the minor into a washroom was also premeditated. There was no weapon involved."

Moreover, on three separate occasions during the hearing the trial court emphasized that it was considering the statutory factors. In ruling on the State's first relevance objection to a defense witness's testimony, the trial court stated:

"Here are the factors I need to consider. The seriousness of offense, the history of delinquency, age of the minor, the culpability of the minor, whether the offense was committed in an aggressive or premeditated manner, whether the minor used or possessed a deadly weapon while committing the offense. Those appear to be the only factors."

Ruling on the second relevance objection, the trial court informed defense counsel, "I will give you leeway, Mr. Kessler. I am not going to consider anything outside the factors that are outlined in the statute." In response to the State's fourth relevance objection, the trial court admonished defense counsel, "All right. I will give you leeway, but I am not considering anything outside of these six factors." The record leaves no doubt in our minds that the trial court not only was aware of all of the factors, it was diligent in applying all six of them.

Respondent also maintains that the factors of his age and his lack

of prior delinquency made an EJJ prosecution inappropriate. The record shows that the trial court considered these factors in coming to its decision. At the beginning of its ruling, the trial court stated:

"State did present evidence to show that there was probable cause to believe that these offenses[1] occurred. We then proceeded to the portion of the hearing where the defense must present by clear and convincing evidence that the minor would not be appropriate for transfer based on evaluation of the following factors. Those factors being the seriousness of the offense, history of delinquency, age of minor, culpability of the minor, whether the offense was committed in an aggressive or premeditated manner and whether the minor used or possessed a deadly weapon while committing the alleged offense."

The trial court stated: "All parties have agreed there is no prior delinquency." At the commencement of the hearing, the State informed the trial court that respondent's birthdate was February 24, 1989, making him 13 years old at the time of the offense against J.B.

Our supreme court has said in the context of the juvenile transfer statute, "Where the juvenile judge considers evidence on the various statutory factors *** the resulting decision is a product of sound judicial discretion which will not be disturbed on review." *People v. Clark*, 119 Ill. 2d 1, 14 (1987). This standard was applied to the EJJ statute in *J.W. J.W.*, 346 Ill. App. 3d at 17. We cannot, based upon this record, conclude that the trial court abused its discretion in determining that respondent's lack of prior delinquency or his age did not offset the other factors prescribed in the statute. Accordingly, the trial court did not abuse its discretion in ordering the EJJ proceeding.

In *J.W.*, a murder prosecution where the respondent was 13 years old and had no prior delinquency, designating the proceeding as an EJJ prosecution was held to be within the trial court's discretion. *J.W.*, 346 Ill. App. 3d at 17. Respondent in our case introduced evidence at the EJJ hearing that he usually stayed home and played video games, he got along with his siblings and friends, he was not a member of a gang, he had no substance abuse problems, and he was law abiding and respectful of his elders. However, as the trial court pointed out, none of this evidence was relevant to the six factors enumerated in the statute.

In his brief, respondent minimizes the force used to penetrate five-

---

[1]Respondent was charged with the same offense against a different complainant in a second, unrelated petition in which the State also filed an EJJ motion. Both cases were presented at the same hearing; however, the trial court stated that it used the information presented as to each complainant individually without considering any cumulative effect from multiple charges.

year-old J.B. by referring to the tear in his anus as "slight." However, at the hearing on the EJJ motion, the State's proffer described the injury as a "fresh tearing of the rectum and anus, which were [*sic*] consistent with a sexual assault." There is nothing in the record that leads us to the conclusion that the trial court abused its discretion in finding that respondent committed the offense in an aggressive manner. Respondent emphasizes that his proffer at the hearing on the EJJ motion showed that, while J.B. observed bleeding when he went to the bathroom, no blood was found on his underwear or on the swabs taken at the hospital. We do not see that this mitigates the offense to the point that the trial court abused its discretion in designating the proceeding an EJJ prosecution.

Finally, respondent distinguishes the present case from *J.W.* In *J.W.*, the 13-year-old minor stabbed her mother to death with three different knives, inflicting 123 incise and puncture wounds and 87 stab wounds. *J.W.*, 346 Ill. App. 3d at 8. We agree with respondent that *J.W.*'s facts are distinguishable. A case involving facts as egregious as those in *J.W.* would be rare. However, nothing in *J.W.* requires that the minor's acts reach this level of brutality before the trial court may designate the proceeding an EJJ prosecution. The court in *J.W.* found that EJJ was appropriate where the trial court properly considered each of the six factors, including the minor's age, that the minor had no prior history of delinquency, and the seriousness of the offense. *J.W.*, 346 Ill. App. 3d at 17.

Accordingly, we cannot say that the trial court abused its discretion in designating the instant proceeding an EJJ prosecution. For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

O'MALLEY, P.J., and BOWMAN, J., concur.